UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL L. FERGUSON,

               Plaintiff,         Civil Action No. 13-12132
                                   Honorable Lawrence P. Zatkoff
                                   Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 11]**

Plaintiff Cheryl L. Ferguson ("Ferguson") brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [11, 16], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Ferguson is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [11] be GRANTED, Ferguson's Motion for Summary Judgment [10] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

**II.     REPORT**

    **A.     Procedural History**

On September 27, 2010, Ferguson filed an application for DIB, alleging a disability onset date of June 8, 2010[1]. (Tr. 116-17). Her application was denied initially on January 18, 2011. (Tr. 74-77). Ferguson filed a request for an administrative hearing, which was held on November 30, 2011, before ALJ Anthony Smereka. (Tr. 24-59). Ferguson, who was represented by attorney Deanna Lee-Kaniowski, testified at the hearing, as did vocational expert Luann Castellana. (*Id.*). On January 13, 2012, the ALJ issued a written decision finding that Ferguson was not disabled because she could perform a limited range of sedentary work. (Tr. 8-23). That decision became the Agency's final decision on March 19, 2013, when the Appeals Council denied review. (Tr. 1-5). Ferguson filed for judicial review of the final decision on May 14, 2013. (Doc. #1).

    **B.     Framework for Disability Determinations**

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

---

[1] The Commissioner states that Ferguson alleged an onset date of March 15, 2010. (Doc. #11 at 5). However, the application in the record is consistent with Ferguson's alleged onset date. (Tr. 116).

2

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

*1.     Plaintiff's Reports and Testimony*

Ferguson was born in 1966, had a high school diploma, and graduated from college with a degree in Practical Christian Training (Tr. 28).  She testified that she has not worked since March 15, 2010, when she stopped working at Toys 'R Us/Babies 'R Us as a general laborer, unloading trucks and stocking inventory. (Tr. 28-29).  Her position, which she had for about six months, had been part-time, about 30 hours/week. (Tr. 30).  She testified that the job required her to lift about 25-30 pounds. (*Id.*).  Ferguson testified that prior to that job she had been a

secretary in a high school's counseling center, and before that worked as a college-level computing instructor. (*Id.*). She also testified to other prior employment she had had, including as a secretary, payroll clerk and customer service representative. (Tr. 30-35).

Ferguson testified that she had to stop working at her Toys 'R Us job in March 2010 because she needed hernia surgery at that time. (Tr. 35). She testified that she had three hernia surgeries over a period of about two weeks, but has had no such surgeries since. (*Id.*). However, Ferguson testified that she presently has a bacterial overgrowth (perhaps from a bariatric surgery in 2005), and that she experiences nausea and extreme stomach/intestinal pain. (Tr. 36, 44). She rated her daily pain as a 7/10, but said that about once a month it spikes to what she considers a 10/10, which sends her to the emergency room. (Tr. 37).

Ferguson testified that her doctor will not recommend surgery given the number of "abdominal" surgeries she had already undergone. (*Id.*). She explained that the medications she takes control the severity of her symptoms, but that the symptoms still remain. (*Id.*).

She testified that since 2008 she and her 11 year-old daughter have lived on the second floor of her parents' home. (Tr. 38). Ferguson testified that her days primarily consist of laying in bed and watching television. (Tr. 38). She testified that she helps her daughter with her homework, and occasionally goes downstairs and has dinner with her parents. (Tr. 38-39). Ferguson testified that she sometimes helps prepare dinner, and performs some cleaning chores (though only for a few minutes at a time), and (on good days) helps her mother fold clothes. (Tr. 39). Ferguson testified that she is limited in this manner as a result of hernia surgeries. (*Id.*).

Ferguson testified that she has been seeing a psychiatrist, Dr. Yerasi, since November 2010, and that although she has seen him once every two months (and a counselor on a weekly

4

basis), her mental condition has not improved. (Tr. 39-40). As a result, she stated that her doctors have recently increased her medication dosages. (Tr. 40).

Ferguson testified that she has been treating for depression since 2002, and once had attempted suicide by taking pills. (Tr. 41). She testified that she rarely leaves her home, but tries to do something with her daughter once a month. (Tr. 42). She testified that her father takes her daughter to her events, but that she went herself to one of her daughter's recent swim meets. (Tr. 42-42). However, she testified that she "came straight home after that" because going out amongst people causes her great anxiety. (Tr. 42).

Ferguson testified that she has been prescribed a nitroglycerin-like pill for when she experiences severe pain, and that she had taken three of them in the two months leading up to the hearing. (Tr. 44). She testified that she has five bad days each week, where she is in bed 18-20 hours/day. (Tr. 45). She testified that her dad takes her daughter to and from school every day because of her anxiety and because she needs to be near the bathroom due to her nausea. (Tr. 47-48). When asked by the ALJ why she could not work, she said that no employer would want her as an employee due to the number of days she would be sick or late, or due to the number of extended breaks she would need to take during the day. (Tr. 49).

        2. *Vocational Expert Testimony*

The ALJ asked the VE a series of hypothetical questions based on a person of the same age, education, and work experience as Ferguson. First, the ALJ asked the VE to assume that the hypothetical person could perform light work, with the ability to stand and walk (and sit) at least six hours out of an eight-hour work day, with no climbing of any ladders, ropes, or scaffolds, and only occasional climbing of ramps and stairs. (Tr. 53). This person also could not work at unprotected heights or around dangerous machinery. (Tr. 53). She could not work with the

general public and could engage in no more than occasional contact with co-workers and supervisors. (Tr. 53). She could not perform fast-paced work and was limited to unskilled work. (Tr. 53). The VE responded that, although this person could not perform any of Ferguson's past jobs, she could perform work as a small products assembler (at least 2,000 jobs in southeast Michigan), inspector/sorter (2,500 jobs), and packager (2,500 jobs). (Tr. 54).

The ALJ then asked the VE to assume the same restrictions, but at the sedentary level. The VE testified that the hypothetical person under those restrictions could perform the "inspecting and checking type jobs" (2,500 jobs), assembly jobs (2,000), and "assembly parts tender" (2,000 [sic] jobs). (Tr. 54-55). The VE stated that if the person were off task more than 20% of the time at work, that would preclude competitive unskilled work. (Tr. 57).

### 3. *Medical Evidence*

The Court has thoroughly reviewed Ferguson's medical record. In lieu of summarizing that evidence here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *The ALJ's Findings*

Following the five-step sequential analysis, the ALJ found that Ferguson is not disabled under the Act. At Step One, the ALJ found that Ferguson has not engaged in substantial gainful activity since March 15, 2010, her alleged onset date. (Tr. 13). At Step Two, the ALJ found that Ferguson has the severe impairments of depression, status post hernia repairs, and functional bowel disorder/irritable bowel syndrome. (*Id.*). At Step Three, the ALJ found that Ferguson's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Ferguson's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, except that she cannot climb ladders, scaffolds or ropes, can occasionally climb ramps and stairs, cannot work at unprotected heights or around moving machinery, cannot be exposed to temperature extremes, cannot work with the general public, can have only occasional contact with coworkers and supervisors, cannot perform fast-paced work, and is limited to unskilled work. (Tr. 15).

At Step Four, the ALJ determined that Ferguson is unable to perform her past relevant work. (Tr. 17-18). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Ferguson is capable of performing the jobs of inspector/checker, assembly, and "assembly press tender." (Tr. 18-19). As a result, the ALJ concluded that Ferguson is not disabled under the Act. (Tr. 19).

### D.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**E.     Analysis**

Ferguson presents four arguments as to why she believes the ALJ's decision should be reversed or remanded: "1) the ALJ erred in failing to accept vocational testimony regarding work-preclusive interferences with attention and concentration; 2) the ALJ erred in failing to find the treating psychiatrist's opinion to be consistent with a finding of disability; 3) the ALJ erred in finding [Ferguson] capable of working, while also finding [her] testimony credible; and 4) the ALJ erred in failing to consider [Ferguson's] testimony regarding her increased symptoms or 'bad days' and need to lie down." (Doc. #10 at 11-12). The Court will address these arguments in turn, though the analysis lends itself to discussing the first and second arguments together and the third and fourth arguments together.

> *1.     The ALJ Did Not Err in His Use of the VE Testimony or His Consideration of Dr. Yerasi's Opinion*

Ferguson argues that her treating psychiatrist, Dr. B. Yerasi imposed a limitation that would prevent her from staying on task 33.33% of the time, and that therefore the ALJ should have found her disabled under the VE's testimony that a claimant who would be off task more than 20% of the time would be precluded from competitive work. Specifically, Ferguson argues:

> The ALJ set forth several hypotheticals to the [VE], including a question referring to a treating doctors [sic] indication regarding difficulties in concentration and whether what [sic] 'attention focused concentration' would rule out competitive work. The [VE] testified that if a person who could not stay on task for at least 80% of the day, or workday and would be off task 20% of the time, this level would not be acceptable for competitive unskilled work."

(Doc. #10 at 13). She concludes that "[t]he ALJ's own hypothetical regarding acceptable deficits of attention and concentration resulted in testimony from the [VE] indicating [Ferguson] would be incapable of sustaining any employment." (Doc. #10 at 13). But this argument fails because

9

it rests on a mischaracterization of Dr. Yerasi's opinion, and makes an unfounded presumption about the VE's testimony.

Ferguson treated with Dr. Yerasi starting on November 2, 2010, seeing him about every two months. (Tr. 625). Under the "treating physician rule," an ALJ must give "controlling weight" to the opinion of a treating medical physician if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Where an ALJ does not give the treating source's opinion controlling weight, the ALJ must consider a variety of factors in order to determine the appropriate weight to afford to the opinion; these factors include the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the extent to which the record evidence supports the opinion, whether or not the physician is a specialist, and any other relevant factors tending to support or contradict the opinion. *Id.* Regardless of the weight ultimately assigned to the treating source's opinion, the ALJ is required to "give good reasons ... for the weight [given to the] opinion." *Id.*; *see also* SSR 96–2p, 1996 WL 374188, at *5 (stating that good reasons are those "supported by the evidence in the case record, and [ ] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"). Here, the issue is not so much the weight the ALJ gave to Dr. Yerasi's opinion, or his reasons for that weight (indeed, the ALJ stated that he was giving it "a good deal of weight" and that the opinion was "valuable because [Dr. Yerasi] has an ongoing treating relationship with [Ferguson] and is well positioned to opine regarding her psychological limitations.") (Tr. 17), but rather, the ALJ's interpretation of certain portions of that opinion.

On October 24, 2011, Dr. Yerasi completed a mental residual functional capacity form in which he indicated that Ferguson had "moderate" limitations in eleven mental functional areas, including "Ability to Perform Activities Within a Schedule, Maintain Regular Attendance and Be Punctual Within Customary Tolerances," and in "Ability to Complete a Normal Workday and Workweek Without Interruptions From Psychologically Based Symptoms and to Perform at a Consistent Pace Without an Unreasonable Number and Length of Rest Periods." (Tr. 624). As to Ferguson's "Ability to Maintain Attention and Concentration for Extended Periods," Dr. Yerasi opined that her limitation was between "moderate" and "marked." (*Id.*). The form instructed Dr. Yerasi to check "marked" if he found the evidence "supports the conclusion that the individual's capacity to perform the activity is impaired, 1/3 of an 8-hour workday," and as "marked" if he found the evidence "supports the conclusion that the individual cannot usefully perform or sustain the activity." (*Id.*). Ferguson argues that "[t]his level of limitation is consistent with the ALJ's hypothetical regarding what impairment in attention, focus and concentration would rule out competitive work. Accordingly, the ALJ erred in failing to find that an impairment of 1/3 out of an 8-hour day (33.33%) would be work preclusive when this level exceeds the 20% work-preclusive percentage indicated by the [VE]." (Doc. #10 at 14).

The first flaw in Ferguson's argument relates to her interpretation of Dr. Yerasi's form itself. There is no basis for her assumption that the "moderate" ratings Dr. Yerasi used in it mean that during 1/3 of the workday she would be unable to do *any* work. Rather, being moderately impaired in a particular functional area clearly means that during approximately 1/3 of the workday, Ferguson would be expected to be *impacted* by the noted impairment. Those limitations, in turn, may be able to be accommodated by imposing restrictions on her overall work, which is exactly what happened here. For instance, the ALJ accommodated Ferguson's

11

moderate limitation in the ability to carry out detailed instructions by restricting her to unskilled work.[2] (Tr. 15). Similarly, he accommodated her moderately limited ability to work with others by limiting her to only occasional contact with co-workers and supervisors. (*Id.*).

Second, Ferguson's interpretation makes little sense when the entirety of Dr. Yerasi's form, and the ALJ's discussion of it and the other medical opinions, are considered. For example, Dr. Yerasi opined that Ferguson was "not significantly limited" in her ability to understand, remember and carry out simple, one to two step instructions…" (Tr. 17 citing Tr. 624). According to the form, this means that Dr. Yerasi found that the "effects of [Ferguson's] mental disorder do not prevent [her] from consistently and usefully performing the activity." (Tr. 624). Clearly, if Dr. Yerasi's finding that Ferguson was "moderately" limited in her ability to maintain regular attendance and complete a normal workweek truly meant that she would completely miss 33.33% of her workweek hours, he would not have indicated that she was "not significantly limited" in her ability to "consistently and usefully" perform work requiring only simple, one to two step instruction.[3]

---

[2] The regulations define "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time… a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 404.1568(a). Moreover, no bright-line rule exists requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled work" or "one- and two-step tasks," but excludes a moderate limitation in concentration. Rather, the reviewing court must consider the record as a whole and determine if substantial evidence supports the ALJ's RFC. *See Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008); *see also Sutherlin v. Comm'r of Soc. Sec.*, No. 10–10540, 2011 WL 500212, at *2 (E.D. Mich. Feb.8, 2011).

[3] This is consistent with the ALJ's discussion of another piece of evidence contained in Dr. Yerasi's form – his finding that Ferguson's Global Assessment of Functioning ("GAF") Score was 50. (Tr. 17, citing Tr. 625). As the ALJ correctly explained, citing to *Smith v. Commr. of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007), a GAF Score of 50 is consistent with the ability to work. To be clear, while the Court recognizes that "GAF scores are of limited significance in disability cases," *Caradine v. Commr. of Soc. Sec.*, 2013 WL 388729, at *9 (E.D. Mich. Jan. 11,

This interpretation is borne out by the rest of the ALJ's analysis of the other medical opinions of record. Importantly, the ALJ indicated that, on a whole, the "medical opinions [] do not support a finding of disability" and were consistent with the counseling records. (Tr. 17). The ALJ specifically noted that Dr. Yerasi's check-box findings, including that Ferguson was not significantly limited in her ability to carry out simple, one to two step instructions. He then compared that finding to similar ones by the consulting examiner, Dr. Pamela Herringshaw, and Dr. Blaine Pinaire, a psychologist who reviewed the record for the state agency. (*Id.*). The ALJ specifically found that all three doctors' opinions were similar in the most salient respect of all for purposes of this Court's review – that Ferguson retained the capacity to perform at least simple, unskilled work (*Id.*, citing Tr. 71 (Dr. Pinaire concluding that Ferguson had "sufficient concentration to perform simple 1-2 step tasks, [] on a routine and regular basis"); 428 (Dr. Heringshaw concluding that Ferguson could complete simple and complex tasks); and 624 (Dr. Yerasi concluding that Ferguson could "understand simple and complex instructions and complete simple and complex tasks.")). By discussing the various medical opinions in this manner, the ALJ appropriately made clear his reasonable interpretation of the form completed by Dr. Yerasi. Thus, the Court finds that the ALJ did not err in incorporating into the VE hypothetical a restriction limiting Ferguson to unskilled work[4], and that the ALJ's RFC in this regard is supported by substantial evidence.

---

2013), the Court references it here to show that the ALJ adequately explained his interpretation of Dr. Yerasi's opinion.

[4] Ferguson also fails to establish that the ALJ's hypothetical to the VE was anything more than a general question about what percentage of time a claimant would have to be completely unable to work during a regular workday before that limitation would render her "disabled." (Tr. 57). Again, because Dr. Yerasi did not opine that Ferguson would be off task 33.33% of the workday, the ALJ was not required to include such a limitation in his hypothetical to the VE. *Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) ("In fashioning the hypothetical

> 2. *The ALJ's Credibility Assessment Does Not Conflict with His Determination that Ferguson Was Not Disabled, and He Did Not Need to Include in His RFC a Need for Ferguson to Lie Down During the Day*

Next, Ferguson argues that the ALJ erred in finding her capable of performing work while also supposedly finding her to be credible. The Sixth Circuit has held that an ALJ is in the best position to observe a witness's demeanor and to make an appropriate evaluation as to her credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Thus an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). When a complaint of pain is in issue, ***after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms***, she must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" ***to determine if the claimant's claims regarding the level of her pain are credible***. *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4 at *3, 1996 WL 374186 (July 2, 1996); *see also* 20 C.F.R. § 404.1529.

In discussing Ferguson's credibility, the ALJ wrote:

> After careful consideration of the evidence, I find that [Ferguson's] medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, [Ferguson's] impairments and symptoms are adequately addressed by the restrictions noted in my residual functional capacity assessment.

(Tr. 16). From these two sentences, Ferguson argues that "the ALJ made a determination that [she] is credible." [10 at 18]. She then concludes that "the ALJ's analysis was internally inconsistent because he found [her] credible yet ignored the limitations that [she testified to]. If

---

question to be posed to the [VE], the ALJ 'is required to incorporate only those limitations accepted as credible by the finder of fact.'") (quoting *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th Cir.1993)).

credible, [her] testimony regarding the severity of her symptoms should have been accepted." [*Id.*]. This argument misses the mark, and ignores the distinction (which the Court highlighted above, *supra* at 14) between a finding that impairments exist which *could* reasonably be expected to cause alleged symptoms, and the actual analysis regarding the credible level of a claimant's symptoms.

When read in context, the two sentences from the ALJ's decision on which Ferguson relies clearly show that the ALJ actually found Ferguson was less than fully credible regarding the severity of her symptoms. The ALJ's detailed discussion of the evidence (which immediately followed those two sentences) makes clear that he concluded not that she actually experienced the symptoms *as* alleged, but that *to the extent Ferguson actually experienced* those symptoms, they were adequately accounted for in the RFC.

For instance, immediately following the two sentences on which Ferguson relies, the ALJ wrote, "The medical records do not compel a finding of disability." (Tr. 16). He explained that conclusion by discussing the medical records related to Ferguson's initial and follow-up hernia procedures; the ALJ referenced (1) July and August 2010 doctor notes indicating that Ferguson had denied abdominal pain and nausea, and that the doctor found that "[s]he has amazingly healed the skin sutures just fantastically … Overall she does look just fantastic…"; and (2) notes from her August 2010 follow-up appointment, in which the doctor wrote that she was progressing well and would be fine to seek employment. (*Id.*, citing e.g., Tr. 258-259, 299-300).

The ALJ also noted her late 2010 treatment for abdominal pain, nausea, and fatigue. (Tr. 16). Testing appeared to show the existence of a small bowel obstruction caused by bacterial overgrowth (though it was noted that "multiple structural evaluations [] have not supported the presence of ongoing bowel obstruction."). (Tr. 664-67). However, the ALJ noted that the

treating physician merely prescribed medication and asked her to return in three to four months. (Tr. 16). This was an appropriate observation because this type of conservative treatment is inconsistent with Ferguson's claim of abdominal pain so severe that she would be essentially bedridden for multiple days each week. *See Jennings v. Comm'r of Soc. Sec.*, 2011 WL 7025815, at *7 (E.D. Mich. Oct. 31, 2011) (ALJ properly considered conservative nature of claimant's treatment in discrediting his testimony regarding the intensity, persistence and limiting effects of his pain); S.S.R. 96–7p ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . ."); *Seay v. Comm'r of Soc. Sec.*, No. 11-12252, 2012 WL 3759027, at *6 (E.D. Mich. Aug. 6, 2012) (ALJ properly considered claimant's conservative courses of treatment in evaluating weight to afford treating sources' opinions).

      The ALJ similarly made clear that he did not find Ferguson's depression would result in the type of severe limitations she was claiming. The ALJ noted that Ferguson did not meet the qualifications for in-patient treatment, but did receive out-patient treatment. (Tr. 16). However, the ALJ appropriately noted that the records from those out-patient appointments consistently showed that her thought processes, attention, concentration, impulse control, and judgment were consistently within normal limits. (Tr. 16-17). The ALJ also noted that Ferguson admitted to not being compliant with her medication, despite not having reported side effects. Clearly, the ALJ cited this evidence to support his finding that she was not fully credible regarding the severity of her limitations. *See Soc. Sec. Rul.* 96-7p, 1996 WL 374186, at *7 (July 2, 1996) ("[An] individual's statements may be less credible … if the medical reports or records show that

the individual is not following the treatment as prescribed and there are no good reasons for this failure.").[5]

Finally, as discussed in detail above, *supra* at 9-13, the ALJ's discussion of the various medical opinions in the record makes clear that he did not find Ferguson to be fully credible as to the severity and impact of her alleged symptoms. Indeed, he began that discussion by stating, unequivocally, "the medical opinions likewise do not support a finding of disability." (Tr. 17).

Based on the foregoing analysis, it is clear that Ferguson's argument that "the ALJ made a determination that [she] is credible" regarding the severity of her symptoms [10 at 18] misconstrues the ALJ's analysis and decision. In actuality, the ALJ found her to be less than fully credible in that regard, and found that *to the extent she was credible*, her claimed limitations were adequately accounted for in the RFC determined by the ALJ. Because Ferguson offers no compelling reason for disturbing the ALJ's credibility determination, and because it is supported by substantial evidence, it must stand. *Smith*, 307 F.3d at 379.[6]

---

[5] The medical records also show a history of Ferguson simply failing to attend her therapy sessions. (Tr. 477-530).

[6] The Court rejects Ferguson's argument that the ALJ failed to consider her testimony regarding her increased symptoms, or "bad days," and need to lie down in the hypothetical he posed to the VE. *Bartyzel*, 74 F. App'x at 524. As shown above, Ferguson provides no valid reason for disturbing the ALJ's credibility determination on those matters. Moreover, Ferguson's argument that her testimony on these matters is supported by the record is misplaced. None of the medical records on which she relies actually found or imposed the type of severe limitations she claims. Instead, she relies only on her own testimony (e.g., Tr. 36-38, 45) regarding the severity of her pain and symptoms and on records which contain only her own self-reports about the symptoms she was claiming to experience (e.g., Tr. 294-95, 431, 629, 656-66). To the extent the ALJ found Ferguson to be not credible, he was not required to accept Ferguson's own self reports. *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003) (even where there is "objective medical evidence of an underlying medical condition …an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability."). Because the ALJ properly found Ferguson not fully credible regarding the severity of her symptoms and limitations, he did not err in failing to include in his hypothetical to the VE a need for Ferguson to lie down during the workday. In

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Ferguson's Motion for Summary Judgment **[10]** be **DENIED**, the Commissioner's Motion **[11]** be **GRANTED**, and this case be **AFFIRMED**.

Dated: July 29, 2014  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 29, 2014.

---

that regard, the Court notes that one of her more recent Progress Notes indicates that Ferguson missed her appointment "because she had to babysit for her nephew." (Tr. 477). Being able to engage in that type of activity is clearly inconsistent with the severity of impairments alleged by Ferguson.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager